No. 13-56203

IN THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

CHARLES NICHOLS,
*Plaintiff-Appellant*,

v.

EDMUND G. BROWN, Jr., in his official capacity as
Governor of California; et al.,
*Defendants-Appellees*.

APPEAL FROM THE
UNITED STATES DISTRICT COURT FOR
THE CENTRAL DISTRICT OF CALIFORNIA

Honorable S. James Otero, United States District Judge
Case No. CV 11-09916-SJO (SS)

**CRPA FOUNDATION
AMICUS BRIEF IN SUPPORT OF NEITHER PARTY**

C. D. Michel – S.B.N. 144258
Sean A. Brady – S.B.N. 262007
MICHEL & ASSOCIATES, P.C.
180 East Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
e-mail: cmichel@michellawyers.com

Counsel for Amicus Curiae CRPA Foundation

## CORPORATE DISCLOSURE STATEMENT

The CRPA Foundation has no parent corporations. It has no stock, thus no publicly held company owns 10% or more of its stock.

Date: September 11, 2013  Respectfully Submitted,

/s C. D. Michel
C. D. Michel
Attorney for *Amicus*

## IDENTITY OF THE AMICUS CURIAE

The CRPA Foundation is a 501(c)(3) non-profit entity incorporated under California law, with headquarters in Fullerton, California. Contributions to the CRPA Foundation are used for the direct benefit of Californians. Funds contributed to and granted by CRPA Foundation benefit a wide variety of constituencies throughout California, including gun collectors, hunters, target shooters, law enforcement, and those who choose to own a firearm to defend themselves and their families.

The CRPA Foundation seeks to: raise awareness about unconstitutional laws, defend and expand the legal recognition of the rights protected by the Second Amendment, promote firearms and hunting safety, protect hunting rights, enhance marksmanship skills of those participating in shooting sports, and educate the general public about firearms. The CRPA Foundation supports law enforcement and various charitable, educational, scientific, and other firearms-related public interest activities that support and defend the Second Amendment rights of all law-abiding Americans.

## INTEREST OF THE AMICUS CURIAE

The CRPA Foundation has a strong interest in this case because the outcome will directly affect the right of its supporters to exercise their

fundamental right to carry a firearm. The CRPA Foundation has significant expertise in the area of the Second Amendment that will aid the Court in determining the issues before it. It is a plaintiff-appellant in two pending Ninth Circuit appeals, *Peruta v. County of San Diego*, No.10-56971, and *McKay v. Hutchens*, No.12-57049, both of which challenge aspects of county sheriffs' policies for issuing licenses to carry firearms on Second Amendment grounds. The CRPA Foundation was also an amicus in a recently decided Ninth Circuit appeal, *Mehl v. Blanas*, No.08-15773, another case involving a challenge to a County Sheriff's policy for issuing licenses to carry firearms, in which the Panel granted CRPA Foundation the honor of participating in oral argument as an amicus.

## CONSENT TO FILE

Defendants-Appellees have consented to the filing of this amicus curiae brief, but Plaintiff-Appellant opposes it.

## RULE 29(c)(5) STATEMENT

No party's counsel has authored this brief in whole or in part. No person or entity other than amicus, its members and supporters, and its counsel has made a monetary contribution to the preparation and submission of this brief.

## POSITION OF THE AMICUS CURIAE

There are currently several appeals before this Court raising issues

2

concerning the scope of the right to bear arms. *See, e.g.*, *Peruta v. County of San Diego*, No. 10-56971; *Richards v. Prieto*, No. 11-16255; *Baker v. Kealoha*, No. 12-16258; *McKay v. Hutchens*, No. 12-57049. This appeal should be stayed pending resolution of those other appeals, or at least pending the furthest advanced, *Peruta v. County of San Diego*, No.10-56971, which was submitted on December 6, 2013, and could be decided any day. *Peruta* is briefed by experienced attorneys rather than a pro se plaintiff and was weighed in on by various distinguished amici. Any opinion from *Peruta* (or one of the several other cases concerning the right to bear arms) addressing the merits of the case, regardless of its outcome, will almost certainly impact the legal issues raised in the present appeal with a binding effect. Judicial economy would be furthered by awaiting those opinions before continuing with the present appeal, so that interested parties can analyze such an opinion's meaning and impact on this case. Awaiting those opinions would also provide the Court with meaningful input on important constitutional issues of first impression.

  There is precedent in this Court to issue such a stay. The Court stayed several cases to see if the then pending en banc decision in *Nordyke v. King*, 681 F.3d 1041, would provide legal analysis affecting them. *Peruta v. County of San Diego*, No.10-56971, Order Staying Proceedings, Dec. 20, 2011 (Doc. No. 77);

Order, *Richards v. Prieto*, No. 11-16255 (9th Cir. June 19, 2012); Order at 1, *Rothery v. County of Sacramento*, No. 09-16852 (9th Cir. May 14, 2012); Order, *Mehl v. Blanas*, No. 08-15773 (9th Cir. July 20, 2010). And, *Nordyke* raised a wholly distinct question from all the cases that were stayed. The only commonality they shared was a Second Amendment claim. But, the Court insisted the stay was necessary because the Second Amendment remained a novel issue in the Ninth Circuit post-*Heller*. Here, *Peruta* involves a very similar legal question to the one raised by Plaintiff, and the Second Amendment remains a novel issue in the Ninth Circuit until *Peruta* is decided. So a stay is even more appropriate.

Additionally, how the issues are decided in this appeal will likely not only affect Plaintiff, but may also have ramifications on the constitutional rights of (at least) all California residents. A case with such potentially dramatic and far-reaching consequences should not be decided on the briefing of a legally unsophisticated (albeit well-intentioned) individual. The issues presented in this appeal – at least the one concerning the scope of the right to bear arms – deserve to be addressed with the most thorough and in-depth analysis. But, until an opinion is rendered in *Peruta* or one of the various other cases addressing the scope of the right to bear arms already pending before this Court, such analysis *cannot* be provided. At this point, all that Amicus (or anyone else) can offer the

4

Court in this case is prognostication on how it believes the *Peruta* panel's opinion would impact the analysis of the legal claims raised by Plaintiff, here. But, that would be unhelpful.

In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the U.S. Supreme Court unequivocally held that the Second Amendment protects an individual right to carry a firearm, especially for self-defense purposes. *Id.* at 592. In reaching that conclusion, the Court conducted a lengthy and detailed analysis of the nation's history and traditions respecting the nature and the scope of the rights protected by the Second Amendment, which analysis included significant discussion about *public* firearm carriage. *See, e.g., id.* at 626-29.

While the Supreme Court did not definitively decide the point – likely because public firearm carriage was not directly at issue in *Heller* – Amicus believes the proper interpretation of that discussion in *Heller* is that the government may, at least where it can adequately justify doing so, prohibit particular manners of carrying firearms in public, as long as *some* manner of carry remains available to all competent, law-abiding adults. So, as Amicus understands *Heller*, the government may be able to, for example, lawfully ban the concealed carry of firearms, as long as the people are able to openly carry them, or vice versa. While Amicus promotes neither open or concealed carry as preferable

5

constitutionally speaking, that government has an option between the two seems to be the most likely lesson the Supreme Court intended to convey in specifically choosing two nineteenth century state court cases that upheld *concealed* carry prohibitions, but only because *open* carry was unaffected, as examples of historically accepted regulations on the right to bear arms. 554 U.S. at 626 (citing *State v. Chandler*, 5 La. Ann. 489, 489-90 (1850); *Nunn v. State*, 1 Ga. 243, 251 (1846).)[1]

Since California Penal Code section 25850 (the statute Plaintiff challenges here) bans the possession of loaded firearms in most public places,[2] there is only one lawful way for Californians to generally carry a firearm for self-defense in public, and that is pursuant to a "Carry License" issued by a sheriff or chief of police. Cal. Penal Code § 26150. In sparsely-populated, rural counties, sheriffs

---

[1] To hold otherwise would mean that governments must choose open carry, even if they preferred concealed, due to their, e.g., urban culture.

[2] *See* Cal. Penal Code §§ 25850(a) (Addend. 030) (generally prohibiting loaded firearms in public within incorporated areas and unincorporated "prohibited areas"); *id.* at § 17030 (defining "prohibited area" as used in section 25850(a) as a "place where it is unlawful to discharge a weapon" thereby exempting areas where it *is* legal to discharge firearms from section 25850(a)'s general prohibition).

Also, persons operating a businesses from a location legally considered a "public place" may have a loaded firearm there, as may their authorized agents or employees. *Id.* at § 26035 (Addend. 106). The same applies to persons on their other privately owned or possessed property. *Id.* at §§ 25605(a), 26035.

and chiefs of police are authorized to issue licenses to *openly* carry arms – which authority is rarely exercised. In more populous counties, such as Los Angeles where Plaintiff resides, California law requires that licensees carry their handguns in a *concealed* manner only. *Id*. at § 26150(b)(2). In sum, the only lawful manner in which Plaintiff would be able to publically carry a firearm within California is concealed pursuant to a Carry License.

To obtain a Carry License, one must first submit a written application showing the applicant is an adult that either resides or spends substantial time at their business or principal place of employment in the particular city or county. *Id*. at § 26150(a)(3). The applicant must also successfully complete a handgun training course of up to 16 hours covering handgun safety and California firearm laws, and must pass a criminal background check. *Id*. at §§ 26165, 26185. And, even if an applicant successfully completes the background check and a suitable handgun training course, a Carry License may only be issued if the applicant is additionally found in the discretion of the sheriff to be of "good moral character" and to have "good cause" for carrying a loaded handgun in public. *Id*. at § 26150(a).

Amicus takes the position in its related appeals of *Peruta* and *McKay* that this licensing regime for public carry that California currently has in place –

7

requiring individuals to submit to evaluations so the government may confirm that they are not dangerous or disqualified from firearm ownership, and that they know how to safely handle a firearm, before they are issued a license to legally carry one – *arguably* passes constitutional muster on its face. However, provisions of the regime can be, and have been, applied unconstitutionally by certain Carry License issuing authorities. In *Peruta* and *McKay*, for example, Amicus challenges on Second Amendment grounds the county sheriffs' application of the "good cause" requirement – in particular, such sheriffs' rejection of "self-defense" as good cause – but do not challenge the licensing, or even the "good cause" requirement, itself.

  Regardless of whether the *Peruta* panel ultimately adopts Amicus's interpretation of *Heller* when rendering its opinion in that case, the opinion will almost certainly impact the present appeal. For example, if the *Peruta* panel does agree with Amicus – which would mean a law-abiding adult's ability to obtain a Carry License for self-defense is protected by the Second Amendment – there will be a question as to whether the general availability of Carry Licenses satisfies California's obligations under the Second Amendment to allow competent, law-abiding adults *some* manner of bearing arms. The answer to that question may well depend on whether the court applies the tradition- and history-based analysis applied by the Court in *Heller* and *McDonald* or whether it applies a means-end

standard or review, such as strict or intermediate scrutiny, that some lower courts have used – and which level of scrutiny it chooses. Each of these approaches could mean a different result in this case.

On the other hand, the Court could hold there is no right to carry in public at all, or only openly, which could completely alter the nature of the analysis of Plaintiff's challenge to California Penal Code section 25850. There are just too many variables at this time to predict how the pending carry cases will impact this case. But it is reasonably certain that, regardless of how those cases are decided, the decisions will likely be dispositive.

## CONCLUSION

This Court should stay this appeal pending resolution of the *Peruta* and *McKay* appeals, in order to further judicial economy and to provide interested parties an opportunity to weigh in on this case *after* seeing what this Court's analysis is in the opinions for those cases, one of which can be expected any day. Should the Court decide to not stay this appeal, Amicus requests that the Court permit Amicus to file a supplemental brief after a decision is rendered in *Peruta*.

Date: September 11, 2013         Respectfully Submitted,

/s C. D. Michel
C. D. Michel
Attorney for *Amicus*

## **CERTIFICATE OF COMPLIANCE**

I certify pursuant to the Federal Rules of Appellate Procedure 32(a)(7)( c) that the foregoing brief is in 14-point, proportionately spaced Times New Roman font. According to the word processing software used to prepare this brief Word Perfect, the word count of the brief is exactly 2031 words, excluding the cover, corporate disclosure statement, table of contents, table of authorities, certificate of service, and this certificate of compliance.

Date: September 11, 2013　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　/s C. D. Michel　　　　　　　
　　　　　　　　　　　　　　　　　　　　C. D. Michel
　　　　　　　　　　　　　　　　　　　　Attorney for *Amicus*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 11, 2013, an electronic PDF of this CRPA Foundation Amicus Brief in Support of Neither Party was uploaded to the Court's CM/ECF system, which will automatically generate and send by electronic mail a Notice of Docket Activity to all registered attorneys participating in the case. Such notice constitutes service on those registered attorneys.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Date: September 11, 2013								Respectfully Submitted,

/s C. D. Michel
C. D. Michel
Attorney for *Amicus*